<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELE L. KOSTER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>Defendant. | Civil Action No. 15-1834 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Michele L. Koster ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Dennis O'Leary denying Plaintiff's application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is affirmed.

**I.   BACKGROUND**

    **A.   Procedural History**

On March 21, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 8, 2008. (R.[1] 172-77, 187.) Plaintiff's application was denied initially on August 16, 2011, and upon reconsideration on

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 4.

December 12, 2011. (R. 88, 101, 112-16, 121-23.) Thereafter, Plaintiff filed a written request for hearing on February 6, 2012 pursuant to 20 CFR 404.929 *et seq*. (R. 124-25.) A hearing was held on January 6, 2013 in Newark, New Jersey before the ALJ. (R. 45-87.) Plaintiff appeared and testified, and was represented by her attorney, Robert Wertalik, Esq. (*Id.*)

Following the hearing, the ALJ denied Plaintiff's application in a written decision dated March 13, 2013. (R. 23-44.) Plaintiff timely filed a request for review with the Appeals Council (R. 22), and the Appeals Council affirmed the decision of the ALJ on April 3, 2015. (R. 4-5.) On November 30, 2015, Plaintiff commenced this action. (ECF No. 1.) Plaintiff filed a brief in support (ECF No. 7 ("Pl. Br.")) and Defendant filed a brief in opposition (ECF No. 10 ("Def. Br.")). A review of the docket reveals that Plaintiff did not file a reply brief.

**B.     Factual History**

1. Plaintiff's Self-Reported Background

Plaintiff was 43 years on her date last insured.[2] (R. 37, 172.) Plaintiff was employed as a freelance paralegal, but stopped working on September 8, 2008, the date of the alleged onset of her disability. (R. 190-92.) Plaintiff alleged disability arising from several impairments, including systemic lupus, Sjogren's disease,[3] thyroid problems, chronic fatigue syndrome, disc problems, pinched nerve, and infections. (R. 191.)

---

[2] It is undisputed that Plaintiff only acquired sufficient quarters of coverage to remain insured through June 30, 2010. (R. 26, 179, 181). Therefore, Plaintiff had to prove that she became disabled on or before June 30, 2010 to be entitled to a period of disability and DIB. *See* 42 U.S.C. §§ 416(i), 423(a)(1),(c)(1); 20 C.F.R. §§ 404.101, .131; *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200-01 (3d Cir. 2008) (noting that to receive DIB, a claimant must show that she was insured during the relevant period between her alleged disability onset date and the date she was last insured). Therefore, the time period under consideration is the date of alleged disability (September 8, 2008), through the date last insured (June 30, 2010) (the "relevant time period"). This is also undisputed.

[3] "Sjogren's (SHOW-grins) syndrome is a disorder of your immune system identified by its two most common symptoms — dry eyes and a dry mouth. Sjogren's syndrome often accompanies other immune system disorders, such as rheumatoid arthritis and lupus." Mayo Clinic, *Sjogren's syndrome*, http://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/basics/definition/con-20020275 (last accessed Jan. 12, 2016).

Plaintiff filled out a "Function Report – Adult" in July 2011 (one year after her date last insured). (R. 215-23.) In describing her daily activities, Plaintiff stated as follows: "Take medicine, go to bathroom, help with getting kids off to school, do some chores around the house, watch TV, shower, get kids from school, help with dinner." (R. 215.) She elaborated that she cares for her three youngest children, gets them ready for school, bathes and dresses them, prepares their meals, and takes them to the pediatrician, but that she receives help in these activities from her husband and two older children. (R. 215-16.) Plaintiff further reported that as a result of her impairments she has difficulty concentrating, memorizing details, sitting for long periods, sleeping, and staying awake, and that she wakes up every night with pain in her arms & legs. (R. 216.) She further indicated that she sometimes has difficulty putting on pants and sitting and getting up due to pain in her right leg and back. (R. 216.) Plaintiff reported that she is able to sweep, wash clothes, dust, do dishes, and change beds but that her husband and older children transport the laundry and fold it, and vacuum. (R. 217.) Plaintiff stated that she goes outside most every day and that she is also able to attend birthday parties and picnics. (R. 217, 219.) With respect to physical limitations, Plaintiff reported that she is unable to lift when her back hurts and that pain in her knees also prohibits heavy lifting. (R. 221.) She also stated that she is unable to squat, walk, climb stairs, bend, or kneel as a result of her back issues and joint pain caused by lupus and thyroid disease. (*Id.*) Plaintiff further reported that it is difficult to sit for periods of time when her back hurts. (*Id.*) Plaintiff stated that lupus gave her "brain fog" but that she could follow written instructions, that she was able to follow changes in routine, and that she had no issues with authority figures. (*Id.*)

2. <u>Medical Evidence</u>

The medical evidence in the record can generally be broken down into two categories: medical evidence during the relevant time period (*i.e.*, up to June 30, 2010), and medical evidence after the relevant time period.[4]

### a. During the Relevant Time Period

On September 8, 2008, Plaintiff underwent a cesarean section because she was diagnosed with oligohydramnios. (R. 421-23.) On September 14, 2008, Plaintiff developed post-cesarean section abdominal wall cellulitis and was admitted to the hospital for observation and was treated with intravenous antibiotics, and was discharged two days later. (R. 366-67, 377-78.) On September 18, 2008, Plaintiff returned to the hospital because of continued fever and wound infection, and she was readmitted for additional treatment and discharged the next day. (R. 426-30.)

Plaintiff sought treatment for recurrent headaches on April 1, 2009 and she was diagnosed with headache, chronic sinusitis, and allergic rhinitis upon examination of hypertrophic nasal turbinates. (R. 439-41.) Plaintiff sought treatment for blepharitis on June 26, 2009 and she was prescribed eye drops for treatment. (R. 567.) Plaintiff sought treatment for a placental thrombosis in December 2009, but Dr. Charles Sagorin recommended that treatment be deferred. (R. 662.) In March 2010, Plaintiff was treated for menorrhagia and scheduled for a hysteroscopy and dilation and curettage, but the surgery was cancelled due to a family issue. (R. 517-26.)

---

[4] The Court notes that prior to the alleged onset date, Plaintiff had a thyroidectomy in 1983 and resulting hypothyroidism, a left shoulder injury resulting in shoulder reconstruction surgery in 1996, myalgias/arthralgias related possibly to positive ANA (antinuclear antibodies), fatigue, and neck and low back pain related to degenerative disc disease in her cervical and lumbar spines, but that she worked as a paralegal during this time period. (R. 50.)

### b. After the Relevant Time Period

In September 2010, Plaintiff presented to Michael C. Russonella, D.O., an orthopedic surgeon, for low back pain radiating into her lower left extremity with right foot tingling. (R. 474-75.) Dr. Russonella recommended starting Plaintiff on a conservative course of physical therapy and chiropractic care as well as anti-inflammatory medication, plus an MRI. (*Id.*) An MRI of Plaintiff's lumbar spine in October 2010 revealed disc herniations at L3-4, L4-5, and L5-S1, while a simultaneous MRI of Plaintiff's thoracic spine showed mild mid-thoracic disc dehydration/degeneration at the point of maximum thoracic kyphosis at T6-7 and T7-8; disc bulges at T9-10 and T10-11, but no focal disc herniation. (R. 469-70.) An EMG/NCV study of Plaintiff's lower extremities revealed evidence of chronic right S1 radiculopathy. (R. 465-66.) Plaintiff underwent three acupuncture treatments primarily for low back and right thigh pain (R. 454-58), and in a follow-up examination with Dr. Russonella in November 2010, he diagnosed Plaintiff with right-sided S1 radiculopathy with L5-S1 herniated disc (R. 472). Although Dr. Russonella referred Plaintiff for a possible epidural steroid or selective nerve root injection and surgical consultation (R. 472), the Court could not discern any further treatment records pertaining to the issue.

In October and November 2010, Plaintiff presented to Michael Guma, D.O., a rheumatologist, for possible lupus. (*See* R. 575-80.) Although Dr. Guma noted that Plaintiff tested positive for ANA and he began treatment, Dr. Guma stated that the lupus appeared mild and was possibly related to anxiety, and that he was "not 100% convinced" that it was active, as there was no sign of any active inflammatory disorder. (*Id.*) In June 2012, Dr. Alice Cohen, a hematologist, reported that Plaintiff's lupus was considered borderline. (R. 644-47.)

5

In November 2010, Plaintiff was prescribed Restasis eye drops for her dry eyes. (R. 566.)

In January 2011, Plaintiff presented for neuroma type pain in her right foot and she received a nerve block. (R. 486.) The Court could not discern any further treatment on the issue.

In April 2011, Dr. James Paolino reported that he began treating Plaintiff in December 2010 for a recurring rash, hives, joint pain, Raynaud's, muscle pain, dry eyes and mouth, headaches and hypothyroid, and he opined that Plaintiff was limited to lifting and carrying ten pounds, standing and walking for up to two hours and limited in pushing and pulling and that Plaintiff could sit for up to six hours per day. (R. 492-94.)

Also in April 2011, Dr. Giuliano, Plaintiff's primary care physician, reported that he treated Plaintiff on a monthly basis for fatigue and persistent muscle/joint pain and indicated diagnoses of rheumatoid arthritis and chronic fatigue syndrome. (R. 538-42.) Dr. Giuliano opined that Plaintiff could lift and carry up to five pounds, stand and walk for less than two hours per day, and sit for less than six hours per day, and that Plaintiff was limited to operating hand and foot controls for no more than five minutes because of edema. (*Id.*) Dr. Giuliano made a similar report in 2006 for an earlier disability claim premised on different impairments. (R. 550-51.)

In August 2011, Dr. Kopel Burk, a state agency physician, assessed Plaintiff's RFC and estimated that she could frequently lift 10 pounds, stand and/or walk (with normal breaks) for 2 hours; sit (with normal breaks) for about 6 hours in an 8-hour workday; and that she had "unlimited" ability to push and/or pull, including operation of hand and/or foot controls. (R. 96.) Dr. Ibrahim Housri, another state agency physician, reviewed and affirmed Dr. Burk's assessment in November 2011. (R. 102-111.)

In February 2012, Plaintiff presented to radiologist Dr. Elsie Koh regarding varicose veins. (R. 619-27.) Dr. Koh noted that Plaintiff had previously been prescribed compression stockings

but that Plaintiff had stopped using them because they were uncomfortable and were not providing relief. (*Id.*) After running tests, Dr. Koh reported that her findings were consistent with C3 venous insufficiency, and it was ultimately revealed that Plaintiff had abnormal refluxing great and small saphenous vein tributaries and perforators, and so Dr. Koh suggested radiofrequency ablation. (*Id.*) However, Dr. Charles Sagorin found venous surgery to be a risk of indeterminate value since Plaintiff had multiple medical problems and risk factors. (R. 656-702.) In September 2012, Dr. Koh reported that Plaintiff's venous insufficiency affected Plaintiff's everyday life because it impacted her ability to exercise or walk and sleep. (R. 703.)

In July 2012, Plaintiff's neurologist, Dr. Guha Venkatraman, reported that an MRI suggested the presence of migraines. Further, an MRI of the cervical spine exhibited cervical spondylosis most conspicuous at C4-5 where bilateral disc protrusions and associated hypertrophic bony changes produced neuroforaminal stenosis. (R. 705-40.) An October 2012 EMG/NCV revealed electrodiagnostic evidence for chronic mild right C6-7 radiculopathies, and evidence for right ulnar neuropathy across Plaintiff's elbow. (*Id.*) Dr. Giuliano's treatment notes from September to November 2012 reveal treatment for complaints of fatigue, but are unremarkable. (R. 648-655.)

### 3. Relevant Hearing Testimony

The hearing took place in January 2013, over two years after Plaintiff's date last insured. Plaintiff testified that she was unable to work due to fatigue and pain in her lower back, neck, hips, and joints. (R. 51-52, 54, 56.) Plaintiff stated that she had difficulty concentrating and remembering things due to "brain fog." (R. 52-53.) She further testified that she suffered from migraines, bouts of diarrhea, menorrhagia, numbness in her feet, cold hands, dry mouth and throat, and shooting pain in her right leg. (R. 52, 54, 82-85.) Consistent with her Function Report,

7

Plaintiff testified that she took care of her three younger children, including walking them to school, and that she ran errands when able, that she was able to cook, sweep, and do light grocery shopping, and that she drove a car. (*See* R. 59-73.)

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. Nat'l Labor Relations Bd.*, 804 F.2d 808, 812 (3d Cir. 1986)). "[T]he district court . . . is [not] empowered to weigh the evidence or

8

substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

## III. APPLICABLE LAW

### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do

9

his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(b)–(c), 404.1521. If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. *Id.* If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. *Id.* If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. *Id.* If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. *Yuckert*, 482 U.S. at 146 n.2.

B.     **The Requirement of Objective Evidence**

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." *Id.* Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. *Id.*

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses. 20 C.F.R. § 404.1513(a). Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1); *Hatton v. Comm'r of Soc. Sec.*, 131 Fed. App'x 877, 878 (3d Cir. 2005). Factors

11

to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

## IV.   DISCUSSION

The issue before the Court is whether substantial evidence supports the ALJ's determination that Plaintiff was not disabled within the meaning of the Act during the relevant time period. For the reasons below, the Court affirms the ALJ's decision.

### A.   ALJ Miller's Decision

On December 26, 2013, the ALJ issued a decision denying Plaintiff's application, finding that Plaintiff was not disabled during the relevant time period. (R. 23-44.)

At step one, the ALJ concluded that Plaintiff did not engage in substantial gainful activity during the relevant time period. (R. 28.) At step two, the ALJ determined that Plaintiff had the following severe impairments: migraine headaches; Sjogren's syndrome; systemic lupus; back, neck, and hip pain; and sciatica. (R. 28.) At step three, the ALJ determined that Plaintiff did not have an impairment (or combination of impairments) that met or medically equaled the severity of a listed impairment. (R. 29-30.) Before proceeding to step four, the ALJ formulated Plaintiff's RFC as follows: "After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can only do work at the unskilled level because of issues with concentration." (R. 30-37.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as a paralegal, skilled work, because Plaintiff's RFC allowed only for unskilled work. (R. 37.) At

step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R. 37-38.)

### B. The ALJ's Determination That Plaintiff Was Not Disabled Within the Meaning of the Act During the Relevant Time Period is Supported by Substantial Evidence.

Plaintiff argues that the ALJ's decision is not based on substantial evidence and that the ALJ "acted arbitrarily and erroneously in denying disability benefits for the period in issue to the instant plaintiff." (Pl. Br. at 5-8.) Specifically, Plaintiff points out that "[t]here are no medical reports indicating that the plaintiff could be employed" and that "[m]edical reports by government examining physicians that never stated explicitly that the plaintiff could return to work were not substantial evidence sufficient to overcome a prima facie case of disability." (*Id.* at 5, 6-7.) Plaintiff contends that this case is analogous to *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998), where the Ninth Circuit reversed in part to properly account for chronic fatigue syndrome, because "the ALJ in the instant case failed to properly evaluate the overwhelming symptoms of the plaintiff's psychiatric illnesses." (Pl. Br. at 7-8.)

In opposition, Defendant argues that the decision of the ALJ should be affirmed. (Def. Br. at 13-18.) Defendant first notes that it is the ALJ's responsibility, as the fact finder, to evaluate and weigh the record evidence in making a disability decision. (*Id.* at 13 (citing *Rohmer v. Comm'r of Soc. Sec.*, 131 F. App'x 896, 899 (3d Cir. 2005).) Defendant contends that the ALJ thoroughly evaluated the evidence and emphasizes that there was minimal evidence regarding Plaintiff's medical status during the relevant time period. (*Id.*) Additionally, Defendant argues that the ALJ provided an extensive explanation for his RFC finding. (*Id.* at 14-18.)

13

The Court agrees with Defendant. The ALJ applied the correct law and his conclusions are supported by substantial evidence.[5]

First, the Court notes that at step two, the ALJ adequately explained why he concluded that Plaintiff's thyroid condition or her right foot pain did not qualify as severe impairments. The ALJ acknowledged that the record evidence made consistent reference to Plaintiff's thyroid condition, but also specifically noted Dr. Josephine Jasper, Plaintiff's endocrinologist since January 2001, reported that she had not seen Plaintiff between 2005 and January 2010, and that Dr. Jasper could not opine on whether Plaintiff could perform work-related activities. (R. 28-29.) The ALJ concluded, when objectively viewing the evidence, that the thyroid condition was nothing more than a "slight abnormality, which had no more than a minimal effect on [Plaintiff's] ability perform her work." (R. 29.) Plaintiff does not point to record evidence suggesting otherwise. Similarly, the ALJ concluded that Plaintiff's right foot neuroma did not rise to the level of a severe impairment because only one treatment note, dated January 2011, was present in the record. (*Id.*) The Court finds that the ALJ's determination on this point is supported by substantial evidence.

With respect to RFC, the Court likewise finds that the ALJ's formulation is supported by substantial evidence. As noted, the ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can only do work at the unskilled level because of issues with concentration." (R. 30.) Using this RFC, the ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act during the relevant time period.

---

[5] The Court notes that Plaintiff does not contend in her brief that she had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 for purposes of the ALJ's step three determination.

14

As an initial matter, the Court agrees with Defendant that the evidence in the record from the relevant time period is limited in scope, with the majority of the medical evidence dated prior or subsequent to the relevant time period. Plaintiff alleged disability beginning September 8, 2008, the date she underwent a cesarean section. There is no evidence in the record showing that the complications related to giving birth, including treatment for a post-cesarean abdominal wall cellulitis should have been considered disabling. 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Likewise, Plaintiff fails to establish how the remaining record evidence from the relevant time period—treatment for a recurrent headache in April 2009 (R. 439-41), blepharitis in June 2009 (R. 567), evaluation for placental thrombosis in December 2009 (R. 657), and treatment for menorrhagia in March 2010 (R. 525-26)—could be considered disabling.

In formulating the RFC, the ALJ discussed in detail the evidence in the record and explained why he concluded that Plaintiff had an RFC of sedentary work. In particular, he noted that the medical evidence lacked any indication that Plaintiff was unable to utilize her arms and hands in a manner consistent with sedentary work. (R. 36.) The ALJ also highlighted that the RFC assessments of both Dr. Paolino and Dr. Giuliano were largely consistent with the RFC, and that Plaintiff herself testified that she was able to do work consistent with a sedentary RFC. (*Id.*) The ALJ further noted that the treatment record was not overly persuasive, in that it lacked the type of treatment that would typically be expected for debilitating impairments and that Plaintiff demonstrated a lack of commitment, at least with respect to certain treatments (such as acupuncture). (*Id.*) The ALJ also pointed out that treatment for back pain appeared to cease in November 2010 and that the majority of the record otherwise appears to focus heavily on treatment

of varicose veins and migraines. (*Id.*) Additionally, the ALJ opined that the treatment for lupus, migraines, and dry eyes was standard and appeared to be effective. (*Id.*)

Additionally, the ALJ properly afforded controlling weight to Plaintiff's treating rheumatologist Dr. Paolino because his opinion that Plaintiff could perform sedentary work was consistent with the overall weight of record evidence. (R. 37.) The ALJ also gave substantial weigh to Dr. Giuliano's April 2011, but noted with some skepticism that Dr. Giuliano had given a nearly identical assessment in 2006 while Plaintiff was still employed and approximately two years prior to the alleged onset date. (*Id.*) Additionally, the ALJ gave at least partial weight to the RFC of the state agency physicians to the extent they indicated Plaintiff could perform sedentary work, but he rejected the additional postural and environmental limitations because they were not supported by objective medical evidence. *See* 20 C.F.R. §§ 404.1527(c)(3), (4) (explaining that a medical opinion that is not supported by relevant evidence or is inconsistent with the record as a whole will be accorded less weight). Plaintiff fails to cite to specific evidence in the record which would undermine this point. Further, the ALJ considered Plaintiff's subjective statements, as demonstrated by his limiting her to unskilled work, in recognizing her "brain fog." (*Id.*) Upon reviewing the evidence and the ALJ's decision, the Court finds that the ALJ's determination is supported by substantial evidence and proper as a matter of law.

To the extent that Plaintiff believes that the ALJ failed to properly consider Plaintiff's chronic fatigue syndrome or subjective complaints of pain, Plaintiff fails to point to any specific evidence in the record. The Court notes that a claimant's own description of her impairment and symptoms, standing alone, is not enough to establish disability. 20 C.F.R. §§ 404.1528(a), .1529(a), 416.928(a); *see also Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x. 196, 199 (3d Cir. 2008). Instead, the ALJ must consider "all of the available evidence" when evaluating the intensity

16

and persistence of a claimant's symptoms, including objective medical evidence and a claimant's statements about her symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."). When the medical evidence demonstrates that a claimant persistently attempted to obtain relief from pain, it "lends support" to the claimant's subjective allegations of pain. S.S.R. 96-7(p).[6] Inconsistencies between a claimant's statements and the medical evidence must be explored; subjective statements of pain must be consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Furthermore, the Court notes that credibility findings as to a claimant's testimony regarding his pain and other symptoms fall exclusively to the ALJ, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and are "virtually unreviewable on appeal." *Bieber v. Dep't. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

C. **The ALJ Properly Relied Upon the Grids and SSR 96-9p in Finding Plaintiff Capable of Performing Other Work and Ultimately Finding Plaintiff Not Disabled.**

Plaintiff argues that the ALJ erred in not hearing vocational evidence. (Pl. Br. at 8-11.) Plaintiff contends that the ALJ should not have exclusively used the Medical-Vocational Rules (the "guides") to support a finding that Plaintiff was not disabled because of nonexertional limitations, such as difficulty concentrating. (*Id.*)

---

[6] S.S.R. 96-7(p) states in relevant part:
> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

In opposition, Defendant argues that because Plaintiff's RFC was compatible with the basic mental demands of unskilled, sedentary work, the ALJ correctly concluded that a finding of "not disabled" was appropriate under the grids.

The Court agrees with Defendant. The grids set out various combinations of age, education, work experience and residual functional capacity and direct a finding of disabled or not disabled for each combination. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. "When the four factors in a claimant's case correspond exactly with the four factors set forth in the grids, the ALJ must reach the result the grids reach." *Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 216 (3d Cir. 2007) (citing *Sykes*, 228 F.3d at 263; 20 C.F.R. § 404.1569 and Subpart P, Appendix 2, § 200.00). "However, where the limitations imposed by a claimant's impairments and related symptoms affect the ability to meet both the strength demands and non-strength demands of jobs, the grids will not apply to direct a conclusion as to disability, but will be used solely as a framework to guide the disability decision." *Id.* (citing 20 C.F.R. § 404.1569a(d)).

The ALJ found that Plaintiff's vocational profile and RFC corresponded to Rule 201.28 and 201.21. (R. 38.) Under grid rule 201.28, a significant number of unskilled, sedentary jobs exist in the national economy that an individual similar to Plaintiff could have performed given her age (younger individual 18-44 on her date last insured), education (above high school) and previous work experience (skilled or semiskilled – skills not transferable). *See* 20 C.F.R. pt. 404, subpt P, app. 2 § 201.28. Grid rule 201.21 likewise directs a finding of "not disabled" under these circumstances. *Id.* § 201.21.

The ALJ appropriately relied on the grids as support for his finding that Plaintiff was not disabled because there is no evidence in the record which suggest that the grids were not exactly on point. Indeed, the ALJ specifically explained that the sedentary occupational base was not

significantly eroded where Plaintiff retained the ability to perform unskilled work and specifically retained the abilities to hear and understand simple, oral instructions, as well as to communicate simple information." (R. 37, 38.) SSR 96-9p states that the ability to hear and understand simple oral instructions or to communicate simple information is sufficient to do unskilled work. "Basic communication is all that is needed to do unskilled work. The ability to hear and understand simple oral instructions or to communicate simple information is sufficient. If the individual retains these basic communication abilities, the unskilled sedentary occupational base would not be significantly eroded in these areas." SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, *8. Thus, Plaintiff's allegations that her "brain fog" or chronic fatigue syndrome prevent her from performing unskilled sedentary work are without merit, and the ALJ appropriately relied on the grids to reach a finding of "not disabled."

## V. CONCLUSION

For the foregoing reasons, the decisions of the Commissioner and the ALJ are affirmed. An appropriate order follows this Opinion.

DATED: 1/13/16

JOSE L. LINARES
U.S. DISTRICT JUDGE